T. K. JOHNSTON, *et al.*, v. THE WINFIELD TOWN COMPANY.

1. EXECUTION OF DEED; *Admissions of Petition not to be Contradicted by Plaintiff by Proof.* Where a plaintiff's petition admits the execution and delivery of a deed, the plaintiff cannot, under such petition, introduce evidence for the purpose of showing that the deed was never in fact executed or delivered.

2. DEED; CONSIDERATION; *Impeaching Expressed Consideration.* The grantor in a deed cannot, in the absence of fraud in its execution, introduce evidence on the trial tending to impeach, contradict or vary the consideration expressed in the deed, for the purpose of invalidating the deed, or of setting it aside.

*Error from Cowley District Court.*

ACTION by *Johnston* and four others to set aside and annul a certain quitclaim deed. The petition was as follows:

(*Title.*) "The plaintiffs complain of the said defendant, and aver that the said defendant on the 12th of February 1870 was a corporation, duly incorporated under the laws of said state; that said defendant, on said 12th of February, pre-

tended and fraudulently claimed to be the owner of a certain portion of the town-site of Winfield in said county, to-wit, the N.E.¼ of N.W.¼ of section 28, in township 32 south, range 4 east; that on the 10th of July 1871 the probate judge of said county entered the said described portion of the said town-site at the United States Land-Office at Augusta, Kansas, for the several use and benefit of the occupants and inhabitants thereof, under the act of congress in such case made and provided; that at the time of said entry the plaintiffs respectively, each for himself, was an occupant and inhabitant of said town-site, within the meaning of said act of congress, and was then and ever since has been possessed of a *bona fide* interest therein. The plaintiffs further aver that said pretended ownership of the defendant to said described portion of said town-site of Winfield at said date, 10th of July 1871, was disputed by a great number of persons claiming an interest in said town-site as occupants thereof at the time of said entry, and among whom was each of the plaintiffs. The plaintiffs further aver that between the time of said entry and the 21st of September 1871 attempts were made by many of said occupants, and by said defendant, to compromise and settle said disputed title, which finally resulted in a verbal agreement between the said plaintiffs respectively and the said defendant, which was in substance as follows: The said plaintiffs respectively, each for himself, agreed to make a quitclaim deed to said defendant, and for said defendant's use and benefit, of all his interest in the said town-site, in consideration that the said defendant would pay to him the sum of one dollar in money and also procure the quitclaim of each and every occupant of said town-site within the meaning of said act of congress, of his respective interest so that the said disputed question of title might be permanently settled, and the property of the town enhanced thereby —to all of which agreement on the part of the plaintiffs respectively the defendant agreed. The plaintiffs aver that in pursuance of said described agreement they did on said 21st of September 1871, each respectively make to the defendant his quitclaim deed of his respective interest in and to the said town-site, the names of said plaintiffs, together with some other names of said occupants of said town-site, quitclaiming as aforesaid, being attached to the same deed; that is, each of the plaintiffs, together with others as aforesaid, attached his signature to the same deed, a copy of which is hereto attached marked 'Exhibit A,' and made a part of this petition.

The said plaintiffs further aver that the said defendant did not fulfill its part of the said agreement in this, that it did not pay to either of the plaintiffs the said sum of one dollar, and further, that it did not procure the quitclaim deeds of all the said occupants of the said town-site of their respective interests in the same, as it had agreed to do, nor nearly all of them, so that the said plaintiffs were left and are still left in no better condition than before they respectively executed the said deed. The plaintiffs further aver that the defendant, well knowing that a large number of the occupants of the said town-site had not quitclaimed their respective interests in the same to the defendant, and with a design to cheat and defraud each of the plaintiffs out of his respective interests in said town-site, did wickedly procure a false acknowledgment of the plaintiffs respectively to said quitclaim deed, and did on the 23d of September 1871 cause the same to be recorded in the registry of deeds in said county, in Book A, pages 87, 88 and 89." [Here follow three averments, alike except as to names, each stating that one of the plaintiffs, "at the time of his executing the said quitclaim was a married man, having a wife with whom he was then and is still living, and who did not sign said quitclaim deed:" The demand for judgment was as follows:] "The said plaintiffs each respectively therefore prays that the said quitclaim deed from the plaintiffs respectively to the defendant may be declared null and void, and be wholly set aside, and that the plaintiffs may have judgment against the defendant for the costs of this action."

Annexed to this petition, as "Exhibit A," was the quitclaim deed, which was signed by the plaintiffs and 30 other persons. It appeared to have been acknowledged and certified on the day of its date, and duly recorded. The answer admitted that *The Winfield Town Company* was a corporation, that the plaintiffs executed the deed as stated in the petition, that the town-site of Winfield was entered by the probate judge, as averred, and except as to the matters so admitted denied "each and every allegation in said petition." Trial at the October Term 1873 of the district court. The plaintiffs called one of their number as a witness. After testifying to the usual preliminary matters, and that he had "signed the quitclaim deed set out in the petition," he was asked the

following questions, to each of which defendant objected, which objections were sustained by the court. The questions were as follows:

"Were there any conditions, or was there any agreement, between yourself and the defendant, containing any conditions not named in the deed, which caused you to sign it?"

"State if you signed the deed by reason of any agreement made with you by the defendant, that said deed should not operate as a conveyance until the terms of that agreement should be fulfilled?"

"State if you ever received any consideration for signing said deed?"

"State whether the defendant had agreed to do or perform anything, which was to be the consideration for your signing the deed, and which was not done and performed?"

"What was the real consideration for which you signed the deed?"

"State if you ever delivered the deed to the defendant?"

"State if you ever acknowledged the execution of the deed?"

"State whether or not that deed contained the names of all, or nearly all, of the inhabitants and occupants of the town-site of Winfield, or who were such inhabitants or occupants on the 10th of July 1871, or on the 21st of September 1871?"

"State whether or not, previous to the 21st of September, 1871, the question of title to the town-site of Winfield was in dispute between a portion of the inhabitants and occupants thereof, and the defendant?"

These questions were held incompetent and immaterial. Plaintiffs thereupon rested, and defendant demurred to the evidence. The court sustained the demurrer, and gave judgment in favor of the defendants. The plaintiffs bring the case here on error.

*Alexander & Saffold*, for plaintiffs:

That parol testimony may be adduced to show fraud, or want, failure, or illegality of consideration in a written instrument, or a different consideration from that expressed, is well settled: 54 Ill., 363; 26 Ark., 449; 16 Penn. St., 289; 49 Mo., 212; 67 Penn. St., 459; 33 Tex., 86; 35 Vt., 156;

26—14 KAS.

39 Cal., 523; 3 Iowa, 571; 8 Iowa, 109; 19 Ala., 203; 17 Conn., 201; 13 Allen, 168.  The plaintiffs insist that, in making the deed, or, as explained in the language of their petition, "That each of the said plaintiffs, together with others as aforesaid, attached his signature to the same deed," their *intent* was not to deliver the deed, or to pass any interest, until certain others had signed the deed, and the consideration of their signing fully effected.  And parol evidence is admissible to show that a written instrument was not intended to operate and take effect until certain stipulations not named therein had been complied with, or to show that an attempt had been made to use such instrument in violation of some verbal agreement accompanying it: 11 Penn. St., 233; 36 Eng. Law & Equity, 91; 2 Beasley, (N. J.) 455. And also to show the circumstances under which deed was made: 64 Penn. St., 464; 20 La. An., 415; 39 Ill., 468; 57 Me., 368; 9 Ind., 572.  We have not sought to use parol evidence to establish a new contract, or to conflict with the terms expressed in any written instrument.  We should be allowed such testimony for the purpose of showing that the deed in question is void, and never had any binding force, under the conditions by which it was signed, and also "for want of due delivery."

The plaintiffs sought to show, by parol evidence, that they never *delivered* the deed.  Without delivery, it will be conceded the deed could not take effect.  It is true, the petition does not allege, in so many words, that the deed was not delivered; but it does state that which, if true, shows there was neither a delivery, nor an *intended* one.

We readily grant that a deed, *duly* executed and delivered to the grantee, with the *intention* to pass a title, could not be questioned, unless induced by fraud.  But we think that this averment in the petition, viz., "That the defendant, well knowing that a large number of the occupants of said townsite had not quitclaimed their respective interests in the same to the defendant, and with a design to cheat and defraud each of the plaintiffs out of his respective interest in said town-

site, did wickedly procure a false acknowledgment of the plaintiffs respectively to said quitclaim deed," etc., is sufficient to charge the defendant with fraud, from the making of the deed, and to admit of the evidence offered: 48 Ill., 323; 49 Ill., 62; 44 Mo., 132; 20 N. J. Eq., 463; 10 S. & M., 25. The possession of the deed by the grantee is presumptive evidence of delivery only, and may be controverted by parol evidence: 28 N. Y., 333; 31 Geo., 641; 38 Ala., 26. To constitute a legal delivery of a deed, it must have been delivered and accepted, with the *intention* of delivery; and if such delivery depends on a contingency, the contingency must happen before delivery is complete: 16 Minn., 172; 42 Ill., 311; 34 N. Y., 92; 22 Ind., 36; 20 N. Y., 76. The plaintiffs say that the defendant "did wickedly procure a false acknowledgment of the plaintiffs respectively to said quitclaim deed." In other words, forged the said acknowledgment. We submit further, that it was *competent* for plaintiffs to show by parol evidence, that they had never acknowledged the deed. To shut out evidence of this nature, would give to fraud, trickery and forgery, too ample a scope.

*A. H. Green,* and *Leland J. Webb,* for defendant. No brief on file.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by T. K. Johnston, S. C. Smith, J. D. Cochran, W. Q. Mansfield and J. P. Short, against the Winfield Town Company, to have a certain quitclaim deed set aside and declared null and void. At the trial of the case the court below excluded certain evidence offered by the plaintiffs; and whether the court erred therein or not, is the only question now presented for our consideration. The petition in the court below alleges among other things as follows: The N.E.¼ of the N.W.¼ of sec. 28, in township 32 south, of range 4 east, constituted a portion of the town-site of the town of Winfield, Cowley county. The probate judge of said county entered this portion of said

town-site at the United States land-office "in trust for the sev-
eral use and benefit of the occupants thereof according to their
respective interests." But whether the probate judge ever
entered any other portion of said town-site or not, is not
shown or stated in the petition. The defendant, a corpora-
tion, claimed to own said portion of said town site entered
by the probate judge, but their ownership was disputed by
the plaintiffs, and others. The plaintiffs were occupants and
inhabitants of said town-site, and had and still have an in-
terest therein; but whether any one of them ever was an
occupant or inhabitant of that portion of said town-site
claimed by the defendant, or ever had any interest therein, is
not shown or stated in the petition. The plaintiffs and thirty
other persons, in pursuance of a verbal agreement, made a
quitclaim deed to said defendant for that portion of said town-
site claimed by said defendant. The consideration expressed
in the deed was one dollar paid to each of the grantors, the
receipt of which they each acknowledged in the deed. Ac-
cording to said verbal agreement the defendant was to pay
each grantor one dollar, and obtain a quitclaim deed from
each occupant of said town-site. This was not done, and the
plaintiffs now complain. But how such a quitclaim deed
from each occupant of the town-site *to the defendant* could be
a consideration for the quitclaim deed from the plaintiffs to
the defendant, or how it could be of any benefit to the plain-
tiffs, is not disclosed, and cannot easily be imagined. Whether
such a quitclaim deed would be a benefit to any one, is not
stated in terms. But if it should be a benefit to any one, it
would certainly appear most strongly to be a benefit only to
the defendant. The petition also alleges that the acknowl-
edgment of said quitclaim deed was procured fraudulently.

We do not think that said petition states facts sufficient to
constitute a cause of action. The deed which the petition
asks to have set aside appears upon its face to have been reg-
ularly executed and acknowledged. It is found in the pos-
session of the grantee, and has been duly recorded. All this
appears from the petition and exhibits; and this at least is

*prima facie* evidence that the deed was duly executed and delivered. The petition nowhere alleges that it was not duly executed or delivered. (Perhaps *a denial contained in a petition,* of the execution of a written instrument set forth in the petition, need not be verified by affidavit, as is required to be done of *a denial contained in a subsequent pleading* putting in issue an allegation of the execution of a written instrument.) But the petition not only fails to deny that the deed was duly executed, but it even admits and alleges that it was so done. With reference to the execution the petition uses the word "make," twice; the word "executed," once; the word "executing," three times. The petition does not pretend that there was any fraud in the execution of said deed. It states however that there was fraud in the *acknowledgment* of the execution of the same, and in recording it. But it does not state in what the fraud consists. No facts showing fraud are stated. But even if there was fraud in the acknowledgment of the execution of the deed, or in recording the same, still that would not invalidate the deed. Even if the execution of the deed had never been acknowledged before any officer, and even if the deed had never been recorded, it would still be valid, if it had been in fact executed. There is no breach of said verbal contract, nor of any contract, nor any default on the part of the defendant, alleged in said petition, except that it is therein alleged that the defendant did not pay said plaintiffs, each one dollar, and did not procure a quitclaim deed from all the occupants of said town-site. These two things, which it is claimed should have been done, it will be remembered are what the plaintiffs alleged in their petition constituted the consideration for their executing said quitclaim deed. As to the consideration: We suppose that in the absence of fraud the consideration expressed in the deed cannot be impeached, contradicted, or varied, for the purpose of invalidating the deed. The consideration expressed in the deed we suppose may be contradicted or varied by evidence *aliunde*, where fraud is alleged, or where the grantor sues for the consideration, or where the

grantee sues for a breach of some covenant contained in the deed. But we do not think that such a thing can ever be done in the absence of fraud merely for the purpose of setting aside the deed. The consideration expressed in the present deed was one dollar, and the plaintiffs each in the deed acknowledged the receipt of the same. And this is conclusive in a case of this kind. The evidence offered to be introduced by the plaintiffs, and excluded by the court, was evidence tending to show that the deed was not fully executed, and a want or failure of consideration. That is, the plaintiffs desired to show that the deed was not to be considered a deed until all the occupants of said town-site had executed quit-claim deeds to the defendant, and until the defendant had paid each grantor one dollar, and that none of the conditions had been fulfilled. We do not think that such evidence was admissible under the state of the pleadings. It would all tend to contradict either the plaintiffs' petition, or their said deed, and without any sufficient allegations of either fraud or mistake. We might further say, although we think under the pleadings the question is not in this case, that a deed apparently fully executed and acknowledged and delivered to the grantee, to become an absolute deed upon some condition, is not an escrow, but is immediately a deed absolute. (*McKean v. Massey*, 6 Kas., 122.)

The judgment of the court below is affirmed.

All the Justices concurring.